```
             UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
                   WESTERN DIVISION
```

Ruth Listermann,                :   Case No. 1:05-cv-644
                                :
    Plaintiff,               :
                                :
vs.                             :
                                :
Roman Catholic Archdiocese of   :
Cincinnati,                     :
                                :
    Defendant.               :

**ORDER**

Before the Court is Defendant's motion for summary judgment. (Doc. 19) Plaintiff opposes the motion (Doc. 23), and Defendant has replied. (Doc. 25) Plaintiff claims that Defendant impermissibly terminated her employment based on her age.

**FACTUAL BACKGROUND**

Listermann was hired in February 2000 as an Office Secretary at St. John the Baptist Church. Listermann was 63 years old when she started working at St. John's, replacing a woman who voluntarily retired at the age of 62. Listermann was chosen over another applicant, who was in her late 30s or early 40s. Her duties changed over time, as the parish and its staff grew in the months after she was hired. Her job description (Exhibit 2) lists her duties, which included preparing the parish bulletin and maintaining the parish calendar, along with a number of other office and administrative duties. Her direct supervisors were

-1-

Donna Sunderhaus, and Father Timothy Kallaher.  Ms. Sunderhaus was hired in March 2000 as Business Manager; she was 56 years old when hired.

The parish bulletin is a general interest publication sent to all parishoners on a weekly basis, and containing information on, and announcements of, parish and community events.  The parish calendar is a master list of all scheduled activities for the parish.  One critical function of the master calendar is to avoid any double-booking of parish facilities.  Both of these publications are maintained and produced using computer-based programs.

Listermann's job duties changed in June 2002, after she and another parish secretary, Jean Foster, met with Sunderhaus and Pat Crowder (Director of Religious Education) to discuss balancing staff workloads.  Defendant states that Listermann assumed the duties of the "Office Manager/Secretary," although Listermann denies that she formally accepted an "office manager" position.  There is no doubt that Listermann received a pay raise in conjunction with the changing job functions.  Listermann continued her responsibility for the calendar and the bulletin in her new position.

Defendant contends that Listermann's job performance was less than satisfactory, both before and after the June 2002 shift in duties.  As a result, in June 2003, Sunderhaus met with

Listermann and told her she would be on probation until the end of August 2003.  Sunderhaus' notes of her meeting with Listermann to discuss this probation (Listermann Exhibit 9) state that they discussed problems with the bulletin and the calendar during this meeting.  Sunderhaus also noted other problems, such as Listermann's failure to properly train students who provide after-school office help, and an incident where Listermann left a document in a copy machine rather than copying it and mailing it with the parish bulletin.

According to Sunderhaus, Listermann was continuing to make many mistakes in her work at the end of her probationary period in August 2003.  Listermann's responsibility for the parish bulletin was transferred to Foster, who had also taken over Listermann's job of sending out monthly parishoner birthday letters.  (Listermann testified that this particular task was "not taken away" from her, but that she wanted to keep the calendar as opposed to keeping the bulletin, which was much harder for her to do.  Listermann Deposition at p. 72.)

Defendant contends that even after the probationary period and the changes to her workload, Listermann continued to make many mistakes in the calendar and in other areas.  These mistakes included a missed home communion visit; double-booking of events caused by errors in the calendar; wrong names placed on baptismal certificates; and an incident involving a volunteer

whom Listermann told to come back another time because Listermann was too busy to do the project the volunteer had come to the parish to do. The volunteer later told Pat Crowder that she had been offended by Listermann's response.

The parish staff met on a regular basis, and notes were kept for many of these meetings. Sometime after Listermann began working for the parish, the meetings were divided in two parts: all staff would attend the first part of the meetings, for general administrative matters. The second part of the meeting involved only pastoral staff, and the office staff would leave. The pastoral staff discussed confidential parish issues, including employee matters. Sunderhaus and Crowder state that Listermann's job difficulties were often discussed in the pastoral group meeting. Crowder testified that negative comments about Listermann were not put in the meeting minutes "because the minutes were put out in mailboxes. We wouldn't want her - and I'm sorry, we were friends - we wouldn't want her feelings getting hurt seeing what we were saying about her." (Crowder Deposition at p. 106.) Sunderhaus confirmed this statement, noting that the only complaints documented in minutes would have been about the calendar mistakes, "things that could have been said in front of Ruth." (Sunderhaus Deposition at p. 55.) Other parish employees (Pat Crowder, Doug Schmutte, and David Kissell among others) support Defendant's contention that Listermann's

job performance was unsatisfactory in many respects.

In June 2004, Sunderhaus and Father Kallaher met with Listermann and told her she would be "retired" at the end of June. Listermann protested that she didn't want to retire, but was told the parish needed someone better on the computers. She asked what would happen if she did not retire; Sunderhaus told her she would be fired. Listermann also asked about her pension, because her five-year vesting period would not expire until February 2005.

A few days later, Listermann met with Sunderhaus again, and Sunderhaus offered her the option of staying with the parish in a part-time position, at a lower hourly rate, through February 2005 so that Listermann could receive her pension. According to Listermann, Sunderhaus also told her that she had "crossed" Pat Crowder, and had "ruffled her feathers," something that Sunderhaus suggested played a role in the decision to "retire" Listermann. (Listermann Deposition at pp. 203-204.) Listermann declined the offer of a part-time job, and her employment was terminated at the end of June 2004.

Defendant does not dispute that Listermann was never given a formal written warning about her job performance. The parish "Personnel Policy Guidelines" (Doc. 23, Exhibit D) state in pertinent part that "dismissal is generally a last resort and occurs after the employee has received a written warning and has

been given an opportunity to improve performance or conduct." The written warning is to be signed by the employee and the supervisor, and placed in the employee's personnel file.

One of Listermann's fellow parish employees was Jill Rengering. Ms. Rengering was hired in February 2001 as a bookkeeper, replacing Joan Otten who retired at that time. Rengering wrote a letter to Listermann on September 8, 2004. The letter states that Sunderhaus said to Rengering about Listermann:

> . . .that due to [Listermann's] age [Listermann's] work performance was not up to par. I asked her if she had pointed out the mistakes to you rather than point them out to me so you would be aware of them. She told me she had not. Finally, she began telling me that you were "Old and Losing It". I told my husband Bob I wondered if she was preparing me for your being fired because she thought you were too old to do the job.

(Listermann Deposition Exhibit 6.) Rengering testified in her deposition that "Before [Listermann] was fired, Donna [Sunderhaus] told me that they would probably have to let her go because she was old and losing it. I did not tell Ruth. . . . But I was told that before she was fired that she was old and losing it." (Rengering Deposition at p. 67.) Rengering testified that this conversation with Sunderhaus happened in May or June 2004, shortly before Listermann left, although she was unsure of the exact date.

**PROCEDURAL HISTORY**

Listermann timely filed a claim of age discrimination with

-6-

the EEOC, and received a right to sue letter.  Her complaint in this case alleges federal and state law claims for discrimination based on age.

Listermann does not contest Defendant's motion as to her Ohio state law claim (see Doc. 23, p. 1 n.1), which leaves only her claim under the federal Age Discrimination in Employment Act for disposition.

**ANALYSIS**

1.  <u>Summary Judgment Standards</u>.

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253 (1968)).  The Court is not duty bound to search the entire record in an effort to establish a lack of material facts.  <u>Guarino v. Brookfield Township Trs.</u>, 980 F.2d 399, 404 (6th Cir. 1992); <u>InterRoyal Corp. v. Sponseller</u>, 889

F.2d 108, 111 (6th Cir. 1989), cert. den., Superior Roll Forming Co. v. InterRoyal Corp., 494 U.S. 1091 (1990).  Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

   The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

   Although summary judgment must be used with extreme caution

-8-

since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir. 1979), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (citations omitted).

2. <u>Age Discrimination Claim</u>.

An employee may establish an age discrimination claim by offering either direct or circumstantial evidence of age discrimination. Listermann argues that she satisfies both standards.

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." <u>Rowan v. Lockheed Martin Energy Systems</u>, 360 F.3d 544, 548 (6th Cir. 2004). In this context, direct evidence is evidence which if believed by the trier of fact, leads directly to the conclusion that age discrimination was a motivating factor in Listermann's termination. Listermann relies on Rengering's testimony about her conversation with Sunderhaus, who was clearly the decisionmaker concerning Listermann's termination. She cites <u>Ezell v. Potter</u>, 400 F.3d 1041 (7th Cir. 2005) to support her

argument that Rengering's testimony is direct evidence of age discrimination.  There, the Seventh Circuit held that a supervisor's statement that he and a co-supervisor had a plan to get rid of older workers and replace them with younger, faster workers was direct evidence of discriminatory intent, and was sufficient to allow plaintiff to take his case to trial.  <u>Ezell</u> in turn relied on <u>Wichmann v. Board of Trustees of S. Illinois Univ.</u>, 180 F.3d 791, 801 (7th Cir. 1999), where the court characterized as direct evidence a supervisor's statement in response to a question about why the plaintiff had been terminated:  "Think of it like this.  In a forest you have to cut down the old, big tress so the little trees underneath can grow."

Defendant cites <u>Scott v. Postmaster General</u>, 182 Fed. Appx. 521 (6th Cir. 2006), an unpublished decision from the Sixth Circuit.  There, the Court rejected plaintiff's alleged direct evidence of discrimination, a remark made by his supervisor: "Why don't you retire and make everybody happy."  The Court held this was not direct evidence of discrimination, because "retire" does not necessarily refer to "age" or anything directly related to age.  Several inferences would be necessary to connect the statement to discriminatory animus.  The Court also noted that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age satisfy this criteria."  (Internal citations omitted)

Here, the Court must conclude that Rengering's testimony, if believed by the trier of fact, could constitute direct evidence of Sunderhaus' decision to terminate Listermann because she was "old." The word itself connotes bias. A plaintiff's evidence need not establish that impermissible discrimination was the **sole** motivating factor; the evidence need only "tie the decision" to discriminatory animus; see Rowan v. Lockheed Martin, 360 F.3d at 548. Or stated another way, the evidence must show that the employee's age was "a substantial factor" in her termination. See Price Waterhouse v. Hopkins, 490 U.S. 228, 276 (1989)(O'Connor, J., concurring).

Defendant urges the Court to discount or disregard Rengering's testimony, suggesting she "wavered" in her testimony, presented "disjointed" testimony, and was unable to state the exact date of her conversation with Sunderhaus. All of these arguments go to judging Rendering's credibility, which is not the province of this Court. Her deposition testimony adequately describes the time, place and content of Sunderhaus' alleged statement, which is sufficient for purposes of raising a genuine issue of material fact.

If direct evidence of discrimination is presented, the burden then shifts to "the employer to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." Price

Waterhouse v. Hopkins, 490 U.S. at 276.  Defendant can present its evidence to the jury that Listermann's termination was premised upon her job performance (a contention Listermann disputes in several factual respects), and not upon her age.

Listermann argues that she has also presented adequate circumstantial evidence of age discrimination.  Circumstantial evidence is evidence  ". . . that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." Wexler v. White's Fine Furniture, 317 F.3d 564, 570 (6th Cir. 2003).  An age discrimination claim based on circumstantial evidence is analyzed under the well-established McDonnell-Douglas framework. Listermann must establish that she is a member of a protected class, she suffered an adverse employment action, she was qualified for her job, and she was replaced by a substantially younger person.  See, e.g., Wexler v. White's Fine Furniture, 317 F.3d 564, 570 (6th Cir. 2003).  Listermann does not articulate a basis for a disparate treatment analysis, as she has not identified a similarly situated employee who was treated differently than she was.

The first three prongs of the McDonnell-Douglas test are not in substantial dispute.  The parties disagree as to whether Listermann was replaced by a substantially younger person. Listermann argues that she was replaced by Jean Foster, who is

-12-

fifteen years younger than Listermann. Jean Foster was hired in September 2001 as a parish secretary. She was fifty years old when she was hired. Foster assumed responsibility from Listermann for preparation of the parish bulletin in August 2003, after Listermann's probationary period ended. Foster's affidavit states that after Listermann's discharge, she temporarily performed Listermann's job duties while the parish looked for Listermann's replacement. Once the replacement was hired, Foster retained only the responsibility of maintaining the parish calendar, with the remainder of Listermann's other duties going to the newly hired employee.

Defendant hired Mary Ann Coate in September 2004. Coate is one year younger than Listermann. Her job description, as Office Secretary, almost completely matches the jobs that Listermann testified she was actually performing at the time of her discharge, with the exception of the parish bulletin. As noted above, there is no dispute that the responsibility for the calendar and bulletin switched during Listermann's employment, with Foster taking responsibility for the bulletin. Those duties switched again between Foster and Coate after Listermann's departure. Sunderhaus confirms these facts in her affidavit.

Listermann attempts to create a disputed issue of fact on this question, arguing that Foster was given a new title of "Office Administrator" in July 2004, essentially "taking over"

Listermann's job. Job titles or formal classifications are not controlling; rather, the proper inquiry is what tasks were performed by the employee. Moreover, the fact that Foster performed Listermann's job on a temporary basis is not dispositive; the question is whether St. John's hired a replacement. Clearly the parish did so when it hired Coate. Listermann also submits several unverified documents (job descriptions, and a lender's inquiry concerning Foster) to argue that Foster replaced Listermann. Even if the Court could properly consider these documents, given Listermann's own testimony about her job duties, and the unrefuted affidavits of Sunderhaus and Foster, the Court concludes that Listermann has not raised a **genuine** issue of material fact on this question.

Listermann also suggests that the fourth prong of the McDonnell-Douglas test can be satisfied simply by "additional direct or circumstantial evidence" that tends to show discriminatory animus on the part of the employer, citing Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998). This modification applies only in the context of a reduction-in-force termination, as Ercegovich plainly holds. This modified standard does not apply to the facts presented by Listermann's claim.

**CONCLUSION**

For all of the foregoing reasons, the Court grants summary

-14-

judgment to Defendant on Plaintiff's state law claim of age discrimination, and denies judgment with respect to Plaintiff's federal claim.  Plaintiff's claim will proceed to trial only on Plaintiff's direct evidence case, as Plaintiff has not established a prima facie case of discrimination based on circumstantial evidence under the McDonnell-Douglas rubric.

**SO ORDERED.**

DATED: April 6, 2007                    s/Sandra S. Beckwith
                                        Sandra S. Beckwith, Chief Judge
                                          United States District Court